**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

KEVIN DUGAN,          )
                              )
          Plaintiff,       )
                              )
          v.              )         Civil Action No.   13-2003 (RC)
                              )
                              )
DEPARTMENT OF JUSTICE, *et al.*, )
                              )
          Defendants.   )

**MEMORANDUM OPINION**

     Plaintiff Kevin Dugan is the "[o]wner of [a] firearms business (D.B.A.) PTS," who, at the time he filed this action, was "in federal custody."[1]   Compl. at 1.   Plaintiff requested records under the Freedom of Information Act ("FOIA") pertaining to him and his business located in Selma, Oregon, with a post office box mailing address in San Jose, California.   *Id*.   In this action, "Plaintiff seeks the release of records from the Department of Justice ("DOJ"), Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), Drug Enforcement Administration ("DEA"), and [the Department of] Homeland Security ("DHS")."   *Id*.

     Pending is Defendants' Motion for Summary Judgment [Dkt. # 11], which plaintiff has opposed.   *See* Reply to Gov't's Response to Pl.'s Compl. and Resp. to Judicial Order to Reply [Dkt. # 16].   Upon consideration of the parties' submissions and the entire record, and for reasons explained below, the Court will grant Defendants' motion in part and deny it in part.

---

[1]   In October 2014, plaintiff changed his address of record to a residence in San Jose, California [Dkt. # 18].

# I.   BACKGROUND

On November 19, 2007, a jury in the United States District Court for the Northern District of California convicted plaintiff of multiple counts involving the manufacture and distribution of marijuana plants and of "being an unlawful user of a controlled substance in possession of a firearm."   *Dugan v. United States*, No. CR-03-20010-RMW, 2014 WL 6706056, at *1 (N.D. Cal. Nov. 26, 2014); *see U.S. v. Dugan*, 657 F.3d 998, 999 (9th Cir. 2011) ("Because Defendant also had a business of dealing in firearms, a jury convicted him of, among other things, shipping and receiving firearms through interstate commerce while using a controlled substance, in violation of § 922(g)(3).").   Plaintiff was sentenced in December 2008 to a prison sentence of 96 months. *Dugan*, 2014 WL 6706056, at *1.

<u>Requests for ATF Records</u>

### A.   Request No. 09-670

In a request dated February 6, 2009, addressed to the Department of Justice ("DOJ"), Plaintiff requested records pertaining to himself, his spouse, his business, and his home between 1989 and 2009, and "all police reports generated on 9-2-02 regarding" an address in San Jose, California.   Decl. of Stephanie M. Boucher [Dkt. # 11-2] ¶ 4, Ex. A.   The Justice Management Division ("JMD") referred the request to ATF, *see id.*, Ex. B, which, by letter dated April 15, 2009, denied Plaintiff's request under FOIA exemption 7(A), set out at 5 U.S.C. § 552(b).   ATF informed Plaintiff that "the release [of records] could interfere with enforcement proceedings," and further informed him about his right to appeal that decision to the Office of Information Policy ("OIP") within 60 days.   *Id.*, Ex. C.

### B.   Request No. 11-1083

In a letter dated February 8, 2011, addressed to ATF, Plaintiff requested "all documents,

handwritten notes, computer files, audio and video surveillance tapes, CD's and flash drives pertaining to me and/or Federal Case No. CR-03-20010-RMW." *Id.*, Ex. D.   By letter dated August 15, 2011, ATF informed Plaintiff that it had "contacted the responsible office, and [was] advised that the case is in open status."   Consequently, ATF denied this request as well under FOIA exemption 7(A), and informed Plaintiff about his right to appeal that decision to OIP within 60 days.  *Id.*, Ex. F.

C.   Request No. 12-539

On March 2, 2012, ATF received what appears to be the same request dated February 8, 2011, but adding "including transcriptions of 9-5-02 meeting with [two named individuals]." Boucher Decl. ¶ 10 (citing illegible exhibits G and H).   In what ATF treated as a supplemental request dated March 6, 2012, Plaintiff requested records pertaining to himself and his business. *Id.* ¶ 12 & Ex. I.   By letter dated April 9, 2012, ATF denied this request also under FOIA exemption 7(A), and informed Plaintiff about his right to appeal the decision to OIP within 60 days.  *Id.* ¶ 13 & Ex. J (illegible).   As of April 2014, "OIP ha[d] not processed an appeal" for either of the foregoing requests.   *Id.* ¶ 28.

Requests for DEA Records

A.   Request No. 09-0724-P

JMD referred the above-mentioned February 6, 2009 request to DEA on March 17, 2009. Decl. of Katherine L. Myrick [Dkt. # 11-3], Exs. A, B.   By letter dated August 25, 2009, DEA informed Plaintiff that a search of its Investigative Reporting and Filing System "using the information you provided as search criteria (*i.e.*, complete name, date/place of birth, social security number, etc.) produced negative results[.]"   *Id.*, Ex. D.   DEA invited Plaintiff to provide additional information that might "aide [sic] us in locating the records," and informed him about

3

his right to appeal the decision to OIP within 60 days.   *Id.*

      B.   Request No. 11-00263-P

Plaintiff submitted the above-mentioned February 8, 2011 request to DEA seeking "all documents, handwritten notes, computer files, audio and video surveillance tapes, CD's and flash drives pertaining to me and/or Federal Case No. CR-03-20010-RMW."   *Id.*, Ex. E.   By letter dated February 25 2011, DEA informed Plaintiff that its search by the same terms utilized in the 2009 search did not locate responsive records, and further informed about his right to appeal the decision to OIP within 60 days.   *Id.*, Ex. F.   DEA has no record of an appeal from Plaintiff "prior to bringing this action."   Myrick Decl. ¶¶ 10, 13.

Request No. 11-01031 to OIP

By letter dated March 30, 2011, addressed to DOJ headquarters, Plaintiff requested "a copy of the document that authorizes the Department of Justice to represent the United States of America[,] . . . includ[ing] [in] either civil or criminal litigation."   Decl. of Vanessa R. Brinkmann [Dkt. # 11-1] ¶ 8 & Ex. A.   In a response dated August 23, 2011, OIP described the files it maintains and informed Plaintiff that "the FOIA provides a right of access to federal agency records that exist and can be located in agency files.   [It] does not require agencies to compile information, conduct research, answer questions, or create new documents in response to FOIA requests."   *Id.*, Ex. B.   The letter informed Plaintiff about his right to appeal that response to the Director of OIP within 60 days.   *Id.*   OIP "has no record of receiving an appeal from Plaintiff" with regard to this request.   *Id.* ¶ 10.

Request for DHS Records

Neither party has placed the request to DHS in the record.   It is undisputed that DHS' Office of Biometric Identity Management (formerly US-VISIT Program) received Plaintiff's

request for his records on February 8, 2011, and informed Plaintiff by letter dated February 28, 2011, that "our office does not maintain any records regarding United States Citizens."[2]   Decl. of Michael T. Johnson [Dkt. # 11-4] ¶ 5 & Ex. A; *see* Compl. at 2 (quoting response letter as one of the letters "relat[ing] to this action").

In response to this lawsuit commenced in December 2013, DHS conducted a search of its Arrival Departure Information System and located entries on "several Kevin Dugans." Johnson Decl. ¶ 6.   DHS could not continue to search without first verifying that the entries pertained to Plaintiff.   *Id.*   By letter dated February 18, 2014, DHS advised Plaintiff to provide additional identifying information, including his date of birth or passport numbers and an original fingerprint card, within 30 days or the request would be closed.   *Id.* ¶ 7 & Ex. B.   The letter further informed that "[t]his is not a denial of your request.   Upon receipt of a perfected request, you will be advised as to the status of your request."   *Id.*, Ex. B.   Plaintiff did not respond; consequently, DHS closed his request on April 2, 2014.   Johnson Decl. ¶ 8.

## II.   LEGAL STANDARD

The FOIA confers jurisdiction on the district court to enjoin an agency from improperly withholding records maintained or controlled by the agency.   *See* 5 U.S.C. § 552(a)(4)(B); *McGehee v. CIA*, 697 F.2d 1095, 1105 (D.C. Cir. 1983) (quoting *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980))   An agency's disclosure obligation is triggered by its receipt of a request that "reasonably describes" the records sought and "is made in

---

[2]    This particular office "collects biographic and biometric information—digital finger scans and photographs—from visitors when they enter and leave U.S. airports, seaports, and land border ports of entry, and when they apply for visas at U.S. consulates around the world."   Johnson Decl. ¶ 2.   The Court accepts as true for purposes of resolving the instant motion that the request was addressed to this office.

accordance with [the agency's] published rules stating the time, place, fees (if any), and procedures to follow."   5 U.S.C. § 552(a)(3)(A); *see Citizens for Responsibility and Ethics in Washington v. FEC*, 711 F.3d 180, 185, n.3 (D.C. Cir. 2013) ("Of course, the duties that FOIA imposes on agencies . . . apply only once an agency has received a proper FOIA request.") (citation omitted).

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (citing *Bigwood v. U.S. Agency for Int'l Dev.*, 484 F. Supp.2 d 68, 73 (D.D.C. 2007)).   A court may grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   A "material" fact is one capable of affecting the substantive outcome of the litigation.   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   A dispute is "genuine" if there is enough evidence for a reasonable jury to return a verdict for the non-movant.   *Scott v. Harris*, 550 U.S. 372, 380 (2007).

In a FOIA case, an agency is entitled to summary judgment when it demonstrates that there are no material facts in dispute as to the adequacy of its search for or production of responsive records.   *Nat'l Whistleblower Ctr. v. U.S. Dep't of Health & Human Servs.*, 849 F. Supp. 2d 13, 21 (D.D.C. 2012).   An agency must show that any responsive information withheld is either exempt from disclosure under one of the exemptions enumerated in 5 U.S.C. § 522(b), or cannot be reasonably segregated because it is "inextricably intertwined with" exempt information.   *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).   FOIA mandates a "strong presumption in favor of disclosure," *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991), and consistent with that presumption, the nine statutorily exempt categories of documents must be "narrowly construed."   *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976).   As such, the

" 'burden is on the agency' to show that the requested material" need not be produced because a particular FOIA exemption protects the material from disclosure.   *Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1433 (D.C. Cir. 1992) (quoting 5 U.S.C. § 552(a)(4)(B)). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.' "   *Judicial Watch, Inc. v. U.S. Dep't of Defense*, 715 F.3d 937, 941 (D.C. Cir. 2013) (quoting *ACLU v. U.S. Dep't of Defense*, 628 F.3d 612, 619 (D.C. Cir. 2011)) (other citations omitted).

A district court reviewing an agency's motion for summary judgment conducts a de novo review of the record, and the responding federal agency bears the burden of proving that it has complied with its obligations under FOIA.   *See* 5 U.S.C. § 552(a)(4)(B); *see also In Def. of Animals v. Nat'l Insts. of Health*, 543 F. Supp. 2d 83, 92-93 (D.D.C. 2008) (citing *Assassination Archives & Research Ctr. v. CIA*, 334 F.3d 55, 57 (D.C. Cir. 2003)).   The district court must analyze all underlying facts and inferences in the light most favorable to the FOIA requester.   *See Willis v. DOJ*, 581 F. Supp. 2d 57, 65 (D.D.C. 2008) (citing *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C.1996)).   Accordingly, summary judgment for an agency is appropriate only if the agency proves that it has "fully discharged its [FOIA] obligations[.]" *Moore*, 916 F. Supp. at 35 (citing *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1382 (8th Cir.1985)).

An inadequate search for records also constitutes an improper withholding under the FOIA.   *See Maydak v. U.S. Dep't of Justice*, 254 F. Supp. 2d 23, 44 (D.D.C. 2003) (citations omitted).   Thus, when an agency's search is questioned, the Court must determine the adequacy of the agency's search, guided by principles of reasonableness.   *See Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 28 (D.C. Cir. 1998).   Summary judgment is inappropriate "if a review of the record raises substantial doubt" about the adequacy of the search, *id*., but "the [mere] fact that a

particular document was not found does not demonstrate the inadequacy of a search." *Boyd v. Criminal Div. of U.S. Dep't of Justice*, 475 F.3d 381, 390-91 (D.C. Cir. 2007) (citations omitted); *see Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) ("the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search.") (citation omitted).

"Because FOIA challenges necessarily involve situations in which one party bears the burden of justifying its disclosure decisions, the courts . . . require the government to provide as detailed a description as possible--without, of course, disclosing the privileged material itself--of the material it refuses to disclose." *Oglesby v. U.S. Dep't of Army*, 79 F.3d 1172, 1178 (D.C. Cir. 1996). Such a showing is typically made through an agency's affidavits or declarations, which are presumed to be submitted in good faith. *See SafeCard Servs., Inc., v. S.E.C.*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). This presumption can be rebutted only by "point[ing] to evidence sufficient to put the [a]gency's good faith into doubt." *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981).

"Finally, although FOIA cases typically are decided through summary judgment, courts in this Circuit analyze failure to exhaust administrative remedies motions under Rule 12(b)(6)." *Ayuda, Inc. v. Fed. Trade Comm'n*, No. 13-1266, --- F. Supp. 3d ---, 2014 WL 4829574, at *5 (D.D.C. Sept. 30, 2014), citing *Hidalgo v. FBI*, 344 F.3d 1256, 1260 (D.C. Cir. 2003) (vacating grant of summary judgment and remanding FOIA case "with instructions to the district court to dismiss the complaint under [Rule] 12(b)(6) . . . for failure to exhaust administrative remedies") (other citation omitted).

## III. ANALYSIS

Defendants argue that dismissal is warranted because plaintiff failed to exhaust his

administrative remedies by failing to appeal the determinations of ATF, DEA and OIP, *see* Mem.
of P. & A. at 13-17, and not responding to DHS's request for additional information to enable a
search for responsive records, *see id*. at 20-21.

As apparently is his style, plaintiff's prolix opposition contains assorted arguments. *See,
e.g., Dugan v. United States*, 2014 WL 6706056, at *2 (sentencing judge observing in habeas
proceeding that "Dugan's claims are set forth in voluminous pleadings touching on many subjects.
They are, in many cases, procedurally barred, repetitive, not clearly stated, or frivolous."). 
Because plaintiff has devoted a significant portion of his opposition to issues irrelevant to the
FOIA analysis, the Court will begin with certain realities about the FOIA that shape this decision.

First, a FOIA "requester's identity and purpose for the disclosure are generally immaterial"
in determining whether the agency has satisfied its disclosure obligations. *Clay v. U.S. Dep't of
Justice*, 680 F. Supp. 2d 239, 248 (D.D.C. 2010) (citing *North v. Walsh*, 881 F.2d 1088, 1096 (D.C.
Cir. 1989)) (other citations omitted). For this reason, the Court will not address plaintiff's
arguments concerning his criminal prosecution or his purported innocence. *See* Pl.'s Opp'n at 16,
37[3] ("Plaintiff presented within the complaint, and now presents within this response, proof that
his federal firearms license has been revoked, and that such procedure requires, at a minimum
Notice and an opportunity to present a defense. This action is presented to this court due to a
complete failure . . . of the government in complying with the rules of Federal Procedure requiring
Discovery & Disclosure as a fundamental right."); *cf. Clay*, 680 F. Supp. 2d at 248 ("[T]he FOIA is
not a substitute for discovery rules which govern civil and criminal litigation where '[d]ifferent
considerations' are at issue.") (quoting *Stonehill v. IRS*, 558 F.3d 534, 538 (D.C. Cir. 2009)). In

---

[3]    The page citations to plaintiff's opposition are those assigned by the electronic case filing
system.

addition, the Court will deny plaintiff's pending motion to take judicial notice of information

pertaining to his criminal prosecution.   *See* Not. of Mot. and Mot. for Judicial Notice [Dkt. # 12].

Second, the parties refer to the Executive Office for United States Attorneys ("EOUSA")

and the Bureau of Prisons ("BOP") as though they are defendants, *see* Defs' Facts ¶¶ 16-20, 25-27;

Pl.'s Opp'n at 28-29, 35, but the operative complaint contains no allegations against those DOJ

components and plaintiff has not sought to amend the complaint to include claims against them.

Nor is the referral of records to those components by one of the defendant components at issue.

*See Fowlkes v. Bur. of Alcohol, Tobacco, Firearms & Explosives*, --- F. Supp. 3d ---, 2014 WL

4536909, at *3, n.2 (D.D.C. Sept. 15, 2014) (noting that while DEA is not a party to the action,

"the [parties] EOUSA and [] ATF are obligated to account for the responsive materials located in

their records, even if the decision to release or withhold information is left to the component where

those records originated" and were referred for processing).   Furthermore, the only attachment to

the complaint is unhelpful because it is a generic FOIA request addressed to no particular agency.

Hence, the Court finds that any purported claims arising from requests submitted to BOP and

EOUSA, neither of which is identified in the complaint, are beyond the scope of this litigation.[4]

*See Peralta v. United States Attorney's Office*, 136 F.3d 169, 175 (D.C. Cir. 1998) (instructing that

"the district court's first task [on remand] is to impose order on this chaotic record, and resolve who

---

[4]     In the relief portion of the complaint, plaintiff also mentions "the N.S.A."   Compl. at 6.   But
"the N.S.A." is not named as a defendant and there are no factual allegations in the complaint
concerning this distinct agency.   Hence, to the extent that plaintiff purports to sue the NSA, the
Court finds that no claim has been stated.   *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009),
quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (a complaint must contain
"sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its
face.' "); *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977) (The purpose of the rule
establishing a minimum pleading standard "is to give fair notice of the claim being asserted so as
to permit the adverse party the opportunity to . . . prepare an adequate defense," as well as to
"sharpen the issues to be litigated . . . .") (discussing Fed. R. Civ. P. 8(a)).

the defendant or defendants are in this case."); Compl. at 1 (listing "Parties" as "Defendant Department of Justice, and its agency's A.T.F.E. & D.E.A. and the Homeland Security . . . ."); *see also* 28 U.S.C. § 16.3(a) (explaining that "a request for records of the Department of Justice" should be made "by writing directly to the Department *component* that maintains those records . . . . Your request should be sent to the *component's* FOIA office at the address listed in appendix I to part 16.") (emphasis supplied).

Finally, contrary to what plaintiff suggests throughout his opposition, an agency's declarant need not have participated directly in the actual processing of a FOIA request to be a competent witness.   Rather, "[a] declarant in a FOIA case satisfies the personal knowledge requirement in Rule 56[c] if in [his or her] declaration, [he or she] attests to [his or her] personal knowledge of the procedures used in handling [a FOIA ] request and [his or her] familiarity with the documents in question."   *Barnard v. Dep't of Homeland Sec*., 531 F. Supp. 2d 131, 138 (D.D.C. 2008) (citations and internal quotation marks omitted).   Indeed, the person in charge of a search has been found to be "the most appropriate person to provide a comprehensive affidavit." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991) (citing *Meeropol v. Meese*, 790 F.2d 942, 951 (D.C. Cir. 1986)).   Defendants' declarants have satisfied the foregoing requirement.   *See* Boucher Decl. ¶¶ 2-3 (averring that her statements "are based on knowledge acquired . . . through the performance of [her] official duties as Chief of ATF's Disclosure Division); Myrick Decl. ¶ 1 (averring same in her capacity as Chief of DEA's FOIA/Privacy Act Unit, FOI/Records Management Section); Brinkmann Decl. ¶¶ 1, 4 (averring that as OIP's Senior Counsel responsible for the handling of that office's FOIA requests, her statements are based on "personal knowledge [and] information acquired . . . in the course of performing [her] official duties"); Johnson Decl.¶ 1 (describing himself as the FOIA Program Specialist "responsible for

coordinating all FOIA activities" in DHS's Office of Biometric Identity Management).   Hence, the Court may properly rely on defendants' declarations and, thus, denies plaintiff's request "to strike all portions of all affidavits not base[d] upon personal knowledge . . . ."   Pl.'s Opp'n at 35.

## A. Failure to Exhaust

In FOIA cases, "[e]xhaustion of administrative remedies is generally required before seeking judicial review 'so that the agency has an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision.' "   *Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004) (quoting *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 61 (D.C. Cir. 1990)).   *See Bayala v. United States Dep't of Homeland Sec.*, --- F. Supp. 3d ---, 2014 WL 5573326, at *2 (D.D.C. Nov. 4, 2014) ("Exhaustion enables an agency 'to exercise its discretion and expertise . . . and to make a factual record to support its decision.' Furthermore, with the benefit of an administrative appeal, agencies can 'correct or rethink initial misjudgments or errors' and promote uniformity in its adjudications.") (quoting *Oglesby*, 920 F.2d at 61, 64-65). As the Court of Appeals has explained, although exhaustion of a FOIA request "is not jurisdictional because the FOIA does not unequivocally make it so," *Hidalgo v. FBI*, 344 F.3d 1256, 1258 (D.C. Cir. 2003), the failure to exhaust still "precludes judicial review if 'the purposes of exhaustion' and the 'particular administrative scheme' support such a bar," *id*. at 1258-59 (quoting *Oglesby*, 920 F.2d at 61) (other citation omitted).

## 1. DHS

DHS states that it has been unable to begin a search for records responsive to plaintiff's request because it does not have sufficient information to confirm that entries in its files for "several Kevin Dugans" pertain to plaintiff.   Johnson Decl. ¶ 6.   Plaintiff does not dispute that he did not supply the additional information DHS requested within the 30 days allowed.   Hence,

DHS properly closed plaintiff's request on April 2, 2014, making clear that the letter was "not a denial of your request" but was being closed as unperfected.   Johnson Decl., Ex. B.   *See* 6 C.F.R. § 5.3(b) (DHS regulation informing requesters that a "request [that] does not reasonably describe the records you seek" may delay the agency's response).

2.  OIP

    Plaintiff does not adequately rebut OIP's evidence that he failed to appeal that office's response to his initial request.[5]   Besides, OIP reasonably interpreted the request as posing a question that did not trigger a disclosure obligation under the FOIA.   *See* Brinkmann Decl. ¶ 10 & Ex. B; *Adams v. FBI*, 572 F. Supp. 2d 65, 68 (D.D.C. 2008) ("Under [the] FOIA, an individual may obtain access to records 'written or transcribed to perpetuate knowledge or events.' . . . [The] FOIA neither requires an agency to answer questions disguised as a FOIA request, [n]or to create documents or opinions in response to an individual's request for information.") (quoting *Hudgins v. IRS*, 620 F. Supp. 19, 21 (D.D.C. 1985), *aff'd*, 808 F.2d 137 (D.C. Cir. 1987)) (alterations in original).

    For the foregoing reasons, the claims against DHS and OIP are dismissed not only because plaintiff has failed to exhaust those claims but also because no withholding—improper or otherwise—has occurred.   *See Judicial Watch, Inc. v. Exp.–Imp. Bank*, 108 F. Supp. 2d 19, 27-28 (D.D.C. 2000) (finding that the agency "acted properly" when it failed to conduct a search where, among other things, the requester "declined the [agency's] repeated attempts [to] clarify the request"); *see also Tereshchuk v. Bureau of Prisons*, --- F. Supp. 3d ---, 2014 WL 4637028, at *6

---

[5]    Although OIP has located three appeals from plaintiff, it reasonably explains that it could not act on one of them because plaintiff did not identify the determination being appealed or provide a tracking number.   *See* Brinkmann Decl. ¶¶ 12-16.   The remaining appeals are irrelevant because they arise from decisions made by BOP and EOUSA, *see id.* ¶¶ 15-18, which are not at issue in this case.   *See supra* 10.

(D.D.C. Sept. 16, 2014) ("If the requester fails to comply with the regulations, his FOIA claim is subject to dismissal for failure to exhaust administrative remedies . . . . Furthermore, an agency's interpretation of its own regulations is controlling unless plainly erroneous or inconsistent with the regulation.") (citing *Lardner v. FBI*, 852 F. Supp. 2d 127, 135 (D.D.C. 2012); *Markwest Mich. Pipeline Co., LLC v. FERC*, 646 F.3d 30 (D.C. Cir. 2011)).

Unlike the claims against DHS and OIP, the claims against ATF and DEA have been fully briefed on the merits.   Hence, the Court finds that the purposes of exhaustion will not be defeated by reaching the merits of those claims and, thus, denies defendants' motion to dismiss the claims against ATF and DEA for failure to exhaust.

## B.   ATF's Response

1.   The Adequacy of the Search

In response to plaintiff's requests, ATF searched "[a]ll indices and file systems, including N-Force" by plaintiff's full name, and located records in N-Force.   Boucher Decl. ¶¶ 14, 17. Plaintiff's case was flagged as "in an open status," which the Special Agent in Charge of the San Francisco Field Division confirmed on March 19, 2009, August 10, 2011, and March 16, 2012. *Id*. ¶ 17.   In response to this lawsuit, ATF conducted "another independent and thorough search" by querying the Treasury Enforcement Communications System ("TECS"), which is a broad-based "computerized information system designed to identify individuals and businesses suspected of or involved in violation of federal law."   *Id*. ¶ 19.   ATF relies upon TECS "to locate records within the Department of Justice's Privacy Act system of records entitled 'Criminal Investigation Reports System.' "   *Id*. ¶ 19.

Utilizing plaintiff's full name, ATF again located the responsive records at the San Francisco Field Division "retrievable under [a] Criminal Investigation Number . . . ."   *Id*. ¶ 21.

14

Following a search, the Field Office "confirmed on February 14, 2014 that [plaintiff's] case was still in an open status."   *Id.* ¶ 22.   ATF's declarant avers that "[a]ll indices and file systems, including TECS and N-Force, that would reasonably be expected to contain [responsive records] were searched."   *Id.* ¶ 23.   The Court is satisfied from the detailed description of the filing systems searched and the search methods employed that ATF conducted a search reasonably calculated to locate all responsive records.   *See Fowlkes*, 2014 WL 4536909, at *6 (D.D.C. Sept. 15, 2014) (concluding that ATF's search of TECS for responsive records was reasonable); *see also Abdeljabbar v. Bur. of Alcohol, Tobacco & Firearms*, --- F. Supp. 3d ---, 2014 WL 6478794, at *5 (D.D.C. Nov. 20, 2014), citing *McRae v. U.S. Dep't of Justice*, 869 F. Supp. 2d 151, 160-62 (D.D.C. 2012) ("finding adequate the ATF's search of TECS and N–Force in order to respond to the plaintiff's FOIA request").

2.   The Claimed Exemption

In light of the purported open case, ATF has invoked FOIA exemption 7(A) to withhold the responsive records.   *See* Boucher Decl. ¶¶ 30-39.   FOIA exemption 7(A) shields from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information [ ] could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A).   To justify withholding documents under this exemption, "the DOJ must [] demonstrate that 'disclosure (1) could reasonably be expected to interfere with (2) enforcement proceedings that are (3) pending or reasonably anticipated.' "   *Citizens for Responsibility & Ethics in Washington (CREW) v. U.S. Dep't of Justice*, 746 F.3d 1082, 1096 (D.C. Cir. 2014) (quoting *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1540 (D.C. Cir. 1993)).

The Court of Appeals has instructed that exemption 7(A) "is temporal in nature" and that

"[t]he proceeding must remain pending at the time of our decision, not only at the time of the initial

FOIA request;" consequently, an agency's reliance on the exemption "may become outdated when

the proceeding at issue comes to a close." *Id*. at 1097.   In "the typical case [where exemption

7(A) applies], the requested records relate to a specific individual or entity that is the subject of the

ongoing investigation, making the likelihood of interference readily apparent." *Id*. at 1098.

Although the agency asserting the exemption must state "whether a[n] [] investigation is in fact

ongoing and . . . how disclosure of documents . . . would interfere with it," it need not "recite the

names of subjects under continuing investigation or otherwise disclose information that would

jeopardize the investigation." *Id*. at 1099.   Upon a proper showing, "[c]ategorical withholding is

often appropriate under [e]xemption 7A." *Id*.

### A.   Law Enforcement Purpose

Exemption 7 requires an agency to prove first that the withheld records were compiled for

law enforcement purposes "before . . . withhold[ing] requested documents on the basis of any of

[this exemption's] subparts." *Maydak v. U.S. Dep't of Justice*, 254 F. Supp. 2d 23, 38 (D.D.C.

2003) (quoting *Pratt v. Webster*, 673 F.2d 408, 416 (D.C. Cir. 1982)).   Plaintiff does not contest

the fact that ATF "is a criminal enforcement agency[.]"   Pl.'s Opp'n at 17.   ATF's declarant

describes the withheld records as pertaining "to an investigation being conducted by ATF [in

conjunction with the San Jose Police Department] regarding the cultivation of marijuana by a

Federal Firearms Licensee."   Boucher Decl. ¶ 30.   The investigation falls within ATF's

"responsibility to administer and enforce the Federal firearm laws at 18 U.S.C. §§ 921-931." *Id*.

The Court finds the threshold law enforcement requirement satisfied. *See Fowlkes*, 2014 WL

4536909, at *9 (concluding that ATF's declarant had "adequately establish[ed]" the threshold law

enforcement requirement).

B.   Asserted Harm

ATF's declarant describes the withheld records as investigative notes and accompanying documents prepared during the course of an investigation that the Special Agent in charge of the investigation confirmed in April 2014 "is still open" and "ongoing."   Boucher Decl. ¶¶ 31, 39. According to the declarant, the investigative notes "describe what has transpired . . . during a particular reporting period along with detailed plans for future investigative activity [and] the reports discuss the investigative efforts of other law enforcement officers in addition to ATF personnel."   *Id.* ¶ 32.   In addition, the "activity reports . . . are accompanied by witness statements, property transmittal reports [concerning evidence], local law enforcement incident reports, case summary reports, and property inventory reports."   *Id.* ¶ 33.

The declarant has offered explanations why each category of documents should be exempt from disclosure, *see id.* ¶¶ 34-38, but she has not properly justified the withholdings under exemption 7(A).   "Exemption 7(A) 'does not authorize automatic or wholesale withholding of records or information simply because the material is related to an enforcement proceeding.' . . . Defendant 'must show, by more than [a] conclusory statement, how the particular kinds of investigatory records requested would interfere with a pending enforcement proceeding.' " *Kidder v. FBI*, 517 F. Supp. 2d 17, 28 (D.D.C. 2007) (quoting *North*, 881 F.2d at 1097; *Campbell v. Dep't of Health and Human Servs.*, 682 F.2d 256, 259 (D.C. Cir. 1982)).

The declarant merely concludes that the disclosure of the property transmittal reports, case summary reports, and property inventory reports "would reveal the scope, limits, and direction of the investigation," Boucher Decl. ¶¶ 35, 36, 37, 38; she does not make this claim at all with regard to the witness statements.   *See id.* ¶ 34 (stating only that "[p]remature release of witness statements has the very real potential to endanger such witnesses or cause harassment and harm to

17

the witness' reputations.   In addition, disclosure may well discourage future witnesses from

cooperating with ATF.").   Furthermore, the only remaining aspect of plaintiff's case at the time

the instant declaration was filed was "in relation to an appeal of the forfeiture of firearms," *id.* ¶ 31,

which the declarant has not specifically linked with an ongoing investigation and explained how

disclosure of the withheld information would interfere with the investigation or a reasonably

anticipated enforcement proceeding.   The declarant does not suggest that plaintiff's conviction is

not final or that the ongoing investigation involves "not only [the plaintiff] but also other suspects"

who might face charges.[6]   *Kidder*, 517 F. Supp. 2d at 27-28; *see id.* at 27 ("A pending appeal of a

criminal conviction qualifies as a pending or prospective law enforcement proceeding for purposes

of Exemption 7(A)" because of "the possibility of future law enforcement proceedings" resulting

from a successful appeal) (citation omitted).   *See also Kansi v. U.S. Dep't of Justice*, 11 F. Supp.

42, 44 (D.D.C. 1998) ("The potential for interference with witnesses and highly sensitive evidence

that drives the 7(A) exemption . . . . exists at least until plaintiff's conviction is final.) (citations

omitted); *Adionser v. Dep't of Justice*, 811 F. Supp. 2d 284, 298 (D.D.C. 2011), *aff'd in relevant*

*part sub nom. Adionser v. U.S. Dep't of Justice*, No. 11-5093, 2012 WL 5897172 (D.C. Cir. Nov.

---

[6]    Indeed, plaintiff's conviction became final 90 days after September 20, 2011, when the Ninth Circuit Court of Appeals affirmed his conviction and sentence.   *See United States v. Dugan*, 657 F.3d 998 (9th Cir. 2011); *United States v. Dugan*, 450 Fed.Appx. 633 (9th Cir. 2011); *see also Clay v. United States*, 537 U.S. 522, 527 (2003) (a conviction is final "when [the Supreme Court] affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires."); Supreme Court Rule 13(1) ("A petition for a writ of certiorari . . . is timely when . . . filed with the Clerk of this Court within 90 days after entry of the judgment.")   Moreover, plaintiff's motion for collateral relief from the sentence has been denied, *see Dugan v. United States*, 2014 WL 6706056, at *11 (denying motion for relief under 28 U.S.C. § 2255 and a certificate of appealability), and his forfeiture case appears to be final.   *See United States v. Misc. Firearms, Silencers and Ammunition*, Nos. 12-17757, 12-17758 (9th Cir. May 14, 2014) (unpublished) ("The district court properly granted the government's motion for an order authorizing the destruction of other seized firearms, despite Dugan's motion for return of property under Fed. R. Crim. P. 41(g), because Dugan, as a felon, was not entitled to return of the seized firearms.") (Mandate issued Oct. 27, 2014.)

5, 2012) ("[B]ecause co-defendant's conviction is *not* final, disclosure of the withheld materials could reasonably be expected to interfere with the ongoing criminal proceeding.") (emphasis in original). *But see CREW*, 746 F.3d at 1097 (finding no justification for withholding information under exemption 7(A) where third parties' sentencing hearings and appeals were no longer pending or reasonably anticipated); *id*. at 1099 (explaining that although the "agency's predictive judgment of the harm that will result from disclosure of information" is accorded deference, "it is not sufficient for the agency to simply assert that disclosure will interfere with enforcement proceedings; it must rather demonstrate *how* disclosure will do so.") (citations and internal quotation marks omitted) (emphasis in original).

Given that plaintiff has already been prosecuted, convicted, and sentenced--and appears to have served his sentence, the Court needs considerably more information to conclude that the release of specific types of information will interfere with prospective or ongoing enforcement proceedings.   As the record currently stands, the Court cannot discern from the conclusory statements comprising ATF's declaration how the release of the records responsive to plaintiff's request "could reasonably be expected to interfere with prospective [or ongoing] enforcement proceedings."   Boucher Decl. ¶ 31.   Hence, summary judgment on ATF's invocation of exemption 7(A) is denied.[7]   *See, e.g., Fowlkes*, 2014 WL 4536909, at *11 (finding ATF's

_____

[7]    Although defendants have not invoked any other exemptions, ATF's declaration strongly suggests that other exemptions might apply.   Hence, before entering judgment, the Court will "allow the Government to demonstrate the applicability of other FOIA exemptions[.]"   *August v. FBI*, 328 F.3d 697, 698 (D.C. Cir. 2003).   *See Maydak v. U.S. Dep't of Justice*, 218 F.3d 760, 764 (D.C. Cir. 2000) ("We have plainly and repeatedly told the government that, as a general rule, it must assert all exemptions at the same time, in the original district court proceedings."); *but see August*, 328 F.3d at 698 (distinguishing *Maydak* where "the Government has provided clear evidence that wholesale disclosure would jeopardize the safety and privacy of third parties . . . and [upon the belief that] the Government's failure to invoke all applicable exemptions in the original

justification under exemption 7(E) insufficient where "declarant's explanation merely mirrors the language of the exemption").

## C.  DEA's Response

Because DEA has located no responsive records, the sole question concerns the adequacy of its search.   According to the declarant, any responsive records would have been located in DEA's Investigative Reporting and Filing System ("IFRS") because that system "contains all administrative, general and investigative files compiled by DEA for law enforcement purposes." Myrick Decl. ¶¶ 16, 18.   The files are "titled according to the name of the principal-suspect violator or entity known to DEA at the time the file is opened," but "DEA does not maintain separate dossier investigative case files on every individual or entity that is of investigative interest."   *Id*. ¶ 18.   Information contained in the IFRS is retrieved from DEA's Narcotics and Dangerous Drugs Information System ("NADDIS"), which is indexed by an individual's name, social security number, "and/or date of birth."   *Id*. ¶ 20.   A NADDIS query conducted in June 2009 and again in February 2011 utilizing plaintiff's name, social security number, and date of birth located "[n]o files or reports mention[ing] the plaintiff[.]"   *Id*. ¶ 21.

Plaintiff counters that "DEA has access to responsive records maintained by DOJ or any agency that DEA shares files with," and he suggests that DEA should have searched those "additional systems [that] are accessable (sic) to DEA."   Pl.'s Opp'n at 26.   But this speculative argument fails to cast doubt on the reasonableness of the search because DEA's disclosure obligation generally extends only to those records that are in its custody and control at the time of the FOIA request.   *See Judicial Watch v. U.S. Secret Serv*., 726 F.3d 208, 216 (D.C. Cir. 2013)

district court proceedings was the result of a reasonable mistake, rather than an attempt to gain a tactical advantage over the FOIA requester . . . .").

("[T]he term 'agency records' extends only to those documents that an agency both (1) create[s] or obtain[s], and (2) control[s] . . . at the time the FOIA request [was] made.") (quoting *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 144-45 (1989) (internal quotation marks omitted) (alterations in original).   Furthermore, "[w]hen a request does not specify the locations in which an agency should search, the agency has discretion to confine its inquiry to a central filing system if additional searches are unlikely to produce any marginal return[.]"   *Campbell*, 164 F.3d at 28.

The Court concludes that DEA conducted a reasonably adequate search for responsive records and, having located no responsive records, is entitled to judgment as a matter of law.

## CONCLUSION

For the foregoing reasons, the Court denies summary judgment to the Bureau of Alcohol, Tobacco, Firearms and Explosives, grants summary judgment to the Drug Enforcement Administration, and dismisses the unexhausted claims brought against the Office of Information Policy and the Department of Homeland Security.   A separate order accompanies this Memorandum Opinion.


_____/s/_____
RUDOLPH CONTRERAS
Date:   March 12, 2015                    United States District Judge